**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: March 21 2014

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-32210 |
| | ) | |
| Raul Gomez and | ) | Chapter 7 |
| Evelyn M. Gomez, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION DENYING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 25] and Debtors' response [Doc. #29]. The court held a hearing on the motion that Debtors, their counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will deny the UST's motion.

## BACKGROUND

Debtors are married and, at the time of the hearing, had been residents of Ohio for fourteen months. They moved to Sandusky, Ohio, after Raul Gomez ("Gomez") accepted a position as security director at the Kalahari Waterpark Resort ("the Resort"), an 890-room resort in Sandusky, Ohio. Before moving to Ohio, Debtors had lived in Memphis, Tennessee, for two and a half years, Gomez having had been relocated from Miami, Florida, due to a promotion by a previous employer.

Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on May 23, 2013. Approximately one month before, on April 20, 2013, Debtors purchased two new vehicles, a 2013 Dodge Ram and 2013 Dodge Avenger, from a dealership after obtaining a loan from Walter McKenna in the amount of the total purchase price of $67,511.00, which loan was secured by both vehicles. [*See* UST Exs. 4 & 5]. Prior to the purchase, Debtors owned a 2003 Ford Explorer free and clear that had high mileage (160,000 to 180,000 miles), lacked a heater and was undependable. Gomez testified that he had tried unsuccessfully to obtain financing for a new vehicle in Tennessee before he moved to Ohio. After the Ford Explorer had broken down and several repairs had to be made and before the vehicle broke down again, Gomez approached at least three car dealers in the Sandusky area in an attempt to purchase either a new or used vehicle. His attempts were futile, however, as he was denied financing either because of his credit rating or because he could not afford the large down payment that was required.

Gomez then responded to a sign he saw on the side of the road advertising financing by McKenna for people that cannot otherwise obtain needed financing. McKenna agreed to provide financing to Debtors for two vehicles. Gomez testified that they required two vehicles since Evelyn Gomez had just secured employment as a secretary with a law firm on the opposite side of town from the Resort where he works. Also, Gomez testified that Debtors' work hours differ and that he would at times have to go to work at unpredictable hours such that two vehicles are necessary to ensure that they each can get to work. According to Gomez, given his position as security director of the Resort and the need to get to the Resort under all weather conditions and at various times of the day, and given the fifteen miles that he travels to work, in order to be reliable in his position, he told McKenna that he would need to purchase a four-wheel drive vehicle. The court credit's Gomez's testimony that McKenna would provide financing only for new vehicles so that he could easily re-sell them in the event of Debtors' default and that McKenna did not permit him to choose from a variety of vehicles. Although Gomez looked at the vehicles before purchasing, his choices were limited to the vehicles selected by McKenna.

Gomez testified that his focus at the time of the purchase was not the total cost of the vehicles but the total amount of the monthly car payments, which was $1,296.00. [*See* UST Ex. 4]. According to Gomez, Debtors are current on all of their monthly payments to McKenna. The court takes judicial notice of Debtors' amended bankruptcy Schedule I showing that Evelyn Gomez's monthly income from employment obtained shortly before they purchased the vehicles is $1,748.11.[1] [Doc. # 20 p. 3/10].

The court also credits Gomez's testimony that when he purchased the vehicles, he had not consulted with an attorney regarding bankruptcy and did not know that he would be filing bankruptcy. At the time, he was attempting, albeit unsuccessfully, to work with his mortgage lender regarding the home he owns in Florida, which was the subject of a foreclosure action, and dealing with creditors calling and demanding full payment of the debts owed to them, which ultimately led Debtors to file for bankruptcy relief.

Debtors' Form B22A calculating the means test shows that their annualized current monthly income at the time of filing this case was below the median income for a household the size of Debtors in Ohio. Accordingly, Debtors' means test calculation shows no presumption of abuse arose under 11 U.S.C. § 707(b)(2). The UST filed a motion to dismiss for abuse and is proceeding only under § 707(b)(3).

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in

---

[1] The court takes judicial notice of the contents of its case docket and the Debtors' schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

3

§ 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). As the movant, the UST carries the overall burden of demonstrating, by a preponderance of the evidence, that Debtors' case should be dismissed. *In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013).

In this case, the UST asserts that the facts show a lack of honesty by Debtors in their treatment of their existing creditors. Specifically, the UST contends that the purchase of two new vehicles and incurring over $67,000 in new secured debt one month before filing bankruptcy demonstrates that Debtors are not seeking a fresh start, but rather a head start at the expense of their unsecured creditors. The court disagrees. While such purchases under certain circumstances may demonstrate bad faith or a failure to deal honestly with creditors, *see, e.g., In re Hornung*, 425 B.R. 242 (Bankr. M.D.N.C. 2010), under the specific circumstances of this case, Debtors' purchases do not.

The UST does not dispute that Debtors have experienced financial difficulties and does not dispute that they needed to purchase a vehicle, but focuses on the fact that two vehicles were purchased and both were new, rather than used, vehicles. However, the court finds Debtors' purchase of two vehicles reasonable in order to permit both Debtors to maintain their employment. Given the location of their employment at opposite sides of Sandusky and the somewhat unpredictable hours of Gomez's work, using one vehicle was not a reasonable choice. A second vehicle enables Evelyn Gomez to continue her new employment at the law firm, employment that provides additional monthly income after the car payments of approximately $450.00.

The court also finds that Debtors' purchase of new, rather than used, vehicles was done, from their perspective, out of necessity, and not for the purpose of obtaining a head start at their creditors' expense. Gomez tried and had repeatedly been denied financing to purchase any vehicle. The only party that was willing to loan Debtors money was only willing to do so if they purchased certain new vehicles in order to protect his interest in the event Debtors defaulted on their loan obligations. The court acknowledges that monthly debt service of $1,267.00 for the new cars is on the high side. By comparison, the IRS National Standards at the time this case was filed allow an expense of $1,034 per month as ownership costs for two cars [Available at http://www.justice.gov/ust/eo/bapcpa/20130501/bci_data/IRS_Trans_Exp_Stds_MW.htm]. But Debtors' overall budget as shown on their amended Schedules I and J, [Doc. #20], is not unreasonable. So whether viewed from the perspective of the timing and the total debt incurred or the

monthly debt service on the new cars, the court cannot find, based on Gomez's credible testimony at the hearing, that the purchase was undertaken in contemplation of bankruptcy to maintain or acquire an unaffordable or lavish lifestyle at the expense of their unsecured creditors. Rather, Debtors needed to get to their relatively new jobs and did not have a more affordable and better alternative apparent to them at the time. The court thus finds that Debtors' purchase was not unreasonable under the circumstances and was not done for the purpose of obtaining any advantage over their creditors. *See In re Krohn*, 886 F.2d at 126 (explaining that a court should determine "from the totality of the circumstances whether [the debtor] is merely seeking an advantage over his creditors, or instead is 'honest,' in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings").

In conclusion, the court finds that the UST has not met his burden of showing that granting Debtors relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the totality of their circumstances. A separate order denying the motion to dismiss will be entered under Fed. R. Bank. 9021.

###